IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STRAGENT, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:10cv77-LED-JDL |
| | § | |
| HUAWEI TECHNOLOGIES CO., | § | |
| LTD., ET. AL. | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER AND OPINION

This claim construction opinion construes the disputed terms in U.S. Patent No. 7,095,753 ("the '753"). The parties have presented their claim construction positions. (Doc. No. 73, "PL.'S BR.;" Doc. No. 75, "DEF.'S RESP." and Doc. No. 81, "PL.'S REPLY"). On April 14, 2011, the Court held a *Markman* hearing and heard argument. *See* (Doc. No. 83). For the reasons stated herein, the Court adopts the construction set forth below.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as

1

understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example,

"[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

3

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

**A.** **Overview of Patents-in-Suit**

The '753 patent is directed to a system or method that provides network processor(s) that can efficiently implement multiple network protocols in a "pipelined" fashion. '753 at 1:58-62. Figure 2 of the '753 patent depicts an exemplary configuration of pipelined network processors as contemplated by the patent:



*See* '753 at 3:34-37. Another aspect of the claimed invention includes a network switch or router including multiple pipelined network processors, each implementing a portion of the functionality of the network switch or router. *Id.* at 4:6-21. The network processors include data and control ports through which the pipelined processors communicate to implement data transmission and network data flow protocols. *Id.* at 1:65-2:15.

**B.     Disputed Terms**

"data flow control protocol" ['753, cl. 18]; "network flow control protocol" ['753, cl. 17]; "network data flow control protocol" ['753, cl. 11, 18, 21]

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| rules or conventions for managing the flow of data between devices in a network | rules or conventions for managing the flow of data in a network, including the flow of data between devices or within a device |

The parties agree that the these three terms should be construed together. DEF. RESP. at 9-11; PL.'S REPLY at 2-3. While the parties largely agree on the construction of these terms, the specific dispute was articulated during the *Markman* hearing. Defendant's proposed construction would allow the flow control protocols to be implemented solely within a network device. *See* DEF. RESP. at 10-11. Defendant primarily supports its position via Figure 4 of the '753 and the related portions of the specification. DEF. RESP. at 10-11. Figure 4 of the patent depicts a network device "implementing egress feedback flow control." '753 at 4:6-8. Defendant contends that the specification describes the implementation of the "egress feedback flow control" managing the flow of data within a network device. DEF. RESP. at 10-11. Defendant further argues that Plaintiff's proposed construction is too narrow and excludes the embodiment disclosed in Figure 4. *Id.*

5

Plaintiff, on the other hand, proposes a construction that limits the flow control protocols to managing the flow of data between network devices. PL.'S REPLY at 2-3. Plaintiff contends that Figure 4 of the patent and related disclosure describes pipelined processors implementing system-level flow control. *Id.* Plaintiff further argues that the system-level flow control is directed to managing the flow of the data between devices. *Id.*

Plaintiff is correct that the '753 patent is directed to managing network level protocols in a network environment. *See* '753 at 1:14-16 ("[t]he present invention relates to network devices . . . for implementing network protocols that control data flow."); *see also id.* at 1:58-62; *id.* at 4:1-4. Indeed, the patent defines "flow control" as "the management of data *between devices*." *Id.* at 1:45-47 (emphasis added). Accordingly, the specification supports a construction wherein the claimed protocols manage the flow of the data between devices.

Figure 4 and the related description are not to the contrary. Figure 4 depicts a network device with three pipelined network processors implementing "egress feedback flow control." '753 at 4:8-15. As previously explained, the '753 specification describes "flow control" as the managing of data between devices. *Id.* at 1:45-47. Moreover, the network processors depicted in Figure 4 are described as "each implementing a portion of the functionality of" the network device. *Id.* at 4:8-15. In other words, the pipelined processors in the network device of Figure 4 each implement a portion of the egress feedback flow control, which manages the flow of data between devices.

Defendant's proposed construction would allow the "flow control protocols" to be implemented solely within one device. Such a construction would be contrary to the directed purpose of the patent – the management of data flow in a *network* environment. *See e.g.* '753 at 1:14-16; *id.* at 1:58-62; *id.* at 4:1-4. Moreover, if the protocols could be implemented independent

of a "network" connection, the word "network" itself would be rendered meaningless in the claim terms.[1] Accordingly, limiting implementation of a network protocol to one device is improper and contrary to the teaching of the patent.

Based on the foregoing, the Court finds that the proper construction of "data flow control protocol," "network flow control protocol" and "network data flow control protocol" is "rules or conventions for managing the flow of data between devices in a network."

## **CONCLUSION**

For the foregoing reasons, the Court adopts the constructions set forth above. For the ease of reference, the Court's claim interpretation is set forth in a table attached to this Order.

**So ORDERED and SIGNED this 10th day of May, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[1] Claim 18 of the '753 recites a "data flow control protocol" absent the word "network." However, this term refers back to the earlier claimed "network flow control protocol."

**APPENDIX**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| **data flow control protocol** <br> *'753 Patent, Claim 18* <br><br> **network flow control protocol** <br> *'753 Patent, Claim 17;* <br><br> **network data flow control protocol** <br> *'753 Patent, Claims 11, 18, 21* | rules or conventions for managing the flow of data between devices in a network | rules or conventions for managing the flow of data in a network, including the flow of data between devices or within a device | rules or conventions for managing the flow of data between devices in a network |